UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLISON BRIDGET JASPER                         CIVIL ACTION

VERSUS                                         NO. 25-401

PLAQUEMINES PARISH                             SECTION "B" (3)
GOVERNMENT, ET AL

ORDER AND REASONS

Before the Court are defendant Plaquemines Parish Government's ("PPG") Motion for

Summary Judgment (Rec. Doc. 14), plaintiff Allison Bridget Jasper's ("Jasper") Opposition (Rec.

Doc. 15), and PPG's Reply (Rec. Doc. 16). Also before the Court are Jasper's Motion for

Summary Judgment (Rec. Doc. 26), PPG's Opposition (Rec. Doc. 31), and Jasper's Reply (Rec.

Doc. 32). For the following reasons,

IT IS ORDERED that PPG's Motion for Summary Judgment (Rec. Doc. 14) on Jasper's

federal claims be GRANTED and that Jasper's Motion for Summary Judgment (Rec. Doc. 26) on

her federal claims be DENIED;

IT IS FURTHER ORDERED that remaining state law claims are DISMISSED

WITHOUT PREJUDICE, by declining supplemental jurisdiction over same. *See* 28 U.S.C. §

1367 (c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a

claim if the court has dismissed all claims over which it has original jurisdiction); *see also Parker*

*& Parsley Petroleum Co. v. Dresser Indus*., 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule

is to dismiss state law claims when the federal claims to which they are pendent are dismissed.").

I.      FACTUAL BACKGROUND

In 2020, PPG's financial resources were strained by the COVID-19 pandemic. Rec. Doc.

14-2 at 1. Facing a backlog of $3,029,522 in outstanding state court judgments and the need to

1

address the operational expenses of parish government, in October 2020, PPG passed Ordinance 20-105 which instituted a program called the Judgment Settlement Process ("JSP") to pay and resolve judgments against it. *Id*. The program allows claimants to receive a quicker payout if they accept a 50% reduction of the value of their judgment against PPG. Rec. Doc. 14-4 at 2.  A claimant can choose to opt out of the JSP and instead insist on full payment of their judgments; however, PPG will prioritize claimants who participate in the JSP while still acknowledging the existence of the debt owed to claimants who choose not to participate. Rec. Doc. 14-2.

On April 13, 2022, the 25th Judicial District Court rendered a judgment against PPG in favor of Jasper in the amount of $782,237.29. Rec. Doc. 14-2 at 2. PPG invited Jasper to participate in the JSP in order to expedite the payment of her judgment. *Id*. Jasper has declined this offer repeatedly. *Id*. Jasper states that she has outstanding medical bills in excess of $250,000.000 and is contracted to give her attorneys no less than 40% of the judgment award pursuant to a contingency fee agreement. Rec. Doc. 1 at 5. Because of these facts, Jasper states that accepting the JSP offer is an impossibility because the amount she would be entitled to under the JSP is significantly less than her litigation expenses and the mechanics liens she has on the award. *Id*. Jasper also states that the Parish has not specified a timeframe for when the balance of her judgment would be paid. *Id*. She claims that "[i]t is only recently that [she] learnt that her wait was in vain and that she had zero chance of getting paid unless she participated in the Judgment Settlement Process." *Id*. at 6. She further claims that PPG has a policy and practice of paying only those claimants that participate in the JSP. *Id*. at 6–7. However, as discussed during oral argument held on March 26, 2026, plaintiff's judgment does not expire or become uncollectible, subject perhaps only to certification under state law every 10 years.

2

PPG states that JSP participants have been paid for the calendar years 2022–2025, diminishing the number of outstanding judgment creditors since 2020 from 36 to 11. Rec. Doc. 14-2 at 2.

## II.    PROCEDURAL HISTORY

Jasper sued PPG on February 26, 2025. Rec. Doc. 1. She alleges that PPG's policy "is to have people participate in the Judgement Settlement Process or not pay them at all." *Id*. at 6. She notes that she has not been paid and that she has "zero chance" of being paid unless she becomes a JSP participant. *Id*. She brings several claims against PPG and unnamed government defendants, including taking her property without due process in violation of the Fifth Amendment; inflicting cruel and unusual punishment for refusing to pay the state court judgment in violation of the Eighth Amendment; subjecting her to disparate treatment by refusing to pay non-JSP participants in violation of the Fourteenth Amendment; a "color of law" claim pursuant to Section 1983; a civil conspiracy claim against PPG and unnamed government employees; negligence in their handling of the JSP process; tortious conduct for violating a duty to pay her. *Id*. at 9–27. She also requests punitive damages and expenses of litigation and attorneys' fees. *Id*.

On February 12, 2026, the parties attended a scheduling conference to discuss ongoing legal issues and prepare for trial. Rec. Doc. 23. Pursuant to that pretrial conference, the Court ordered Jasper to file a cross motion for summary judgment addressing only her federal constitutional issues rather than her state law claims. *Id*. Defendants were ordered to respond to Jasper's motion for summary judgment, as well as to attach to their opposition affidavits addressing (1) settled claims, if any, that are paid without being subjected to the JSP and (2) all payments, if any, to non-participants of the JSP since the effective day of the ordinance establishing that program. *Id*. The Court also ordered the parties to attend an oral argument about

the cross motions for summary judgment on March 11, 2026, which the Court later moved to March 26, 2026. *Id*; *see also* Rec. Doc. 30. Jasper has filed her motion for summary judgment. Rec. Dc. 26. PPG has responded and attached to its response the requested affidavits. *See* Rec. Doc. 31.

At the oral argument, the Court asked plaintiff's counsel to distinguish several cases identified as applicable here, including the Louisiana Fourth Circuit Court of Appeal's decision in *Cooper v. Orleans Parish School Board*, 99-0050 (La. App. 4 Cir. 9/9/99), 742 So.2d 55, in which the court found no Equal Protection violation in a school board program that established a hierarchy or priority system for the payment of state court tort judgments because of insufficient funding; and the Fifth Circuit's opinion in *Ariyan v. Sewarage & Water Board of New Orleans*, 29 F.4th 226 (5th Cir. 2022), in which the court, citing the Supreme Court's decision in *Folsom v. City of New Orleans*, 109 U.S. 285 (1883), held that a government entity's failure to timely pay a state court judgment does not constitute a Fifth Amendment violation. Plaintiff's counsel argued that the challenged discounts in *Cooper* were in increments of five or ten percent and that claimants had the option to choose by how much they wanted to discount their state court judgment, as opposed to the categorical fifty percent reduction challenged in the above-captioned matter. Plaintiff's counsel also attempted to distinguish the above-captioned matter from *Ariyan* by aruing that the ordinance creating the JSP is "completely silent" as to creditors who do not opt in and provides no mechanism or plan that would make payment foreseeable to that class of claimants.

Plaintiff's counsel also acknowledged during oral argument that no summary judgment evidence was introduced supporting Jasper's causes of action or disputing PPG's arguments. When confronted with PPG's affidavits, plaintiff's counsel could not contest the information contained therein or show that such information was fasle. Plaintiff's counsel also conceded that Jasper's

4

Eighth Amendment claim should have been framed as a First Amendment retaliation claim and argued that the basis for that claim was that PPG was in effect punishing claimants who exercised their First Amendment rights by refusing to pay them without participating in the JSP.

During their argument, defense counsel highlighted that Jasper is seeking to expand the litigation by adding federal claims that were not included in her complaint. Defense counsel also argued that the point of amendment had passed and that Jasper had not shown good cause for filing an amended complaint. Further, defense counsel continued to highlight that Jasper had not introduced any evidence to create a genuine dispute of material fact.

In response to whether PPG could have considered other payment plans, defense counsel stated that there was no evidence in the record about this topic, nor any suggestion that PPG chose not to accept more reasonable alternatives. Counsel added that Ordinance 20-105 is silent about the COVID-19 pandemic and that the reasons justifying the JSP continue to be financial inability to pay full value of claims in relevant years after the pandemic's end.

### III.    ANALYSIS

#### A.    Legal Standard

Summary judgment is appropriate when the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Material in support or opposition of a motion for summary judgment may be considered if it is "capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making

credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019). Additionally, "conclusory allegations, denials, improbable inferences, unsubstantiated assertions, speculation, and legalistic argumentation do not adequately substitute for specific facts showing a genuine factual issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

    B.    *Analysis*

    i.    <u>PPG's Motion for Summary Judgment</u>

It should be noted at the outset that there are no genuine disputes of material fact. Jasper has not introduced into the record any evidence in support of her claims or to create a material factual dispute. As established at the February 2026 pretrial conference and March 2026 oral argument, Jasper had not engaged in any discovery in furtherance of her claims against PPG.

6

Jasper raises the following claims: (1) an unconstitutional taking in violation of the Fifth Amendment; (2) cruel and unusual punishment in violation of the Eighth Amendment; and (3) discrimination in violation of the Fourteenth Amendment. *See* Rec. Doc. 1. The Court can immediately dispose of Jasper's Eighth Amendment claim. The Eighth Amendment applies to punishments, and typically punishments inflicted pursuant to the criminal process. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 664–668 (1977). The Supreme Court has articulated a two-part test for determining whether a legislative act constitutes punishment: (1) whether the intention of the legislature was to impose punishment and, if not (2) whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it 'civil.'" *Smith v. Doe*, 538 U.S. 84, 92 (2003). Jasper posits in her complaint that "requiring her to give up half the face value of her judgment as well as waive statutory additions is a form of punishment subject to scrutiny under the Eighth Amendment standards" but does not develop this argument in her opposition to PPG's Motion for Summary Judgment, or in her own Motion for Summary Judgment. *See* Rec. Docs. 15, 26. In fact, Further, the Eighth Amendment claim does not relate to a First Amendment violation. As such, PPG's Motion for Summary Judgment in seeking dismissal of the Eighth Amendment claim is **GRANTED**.

Jasper further claims a deprivation of property, in violation of the Fifth Amendment, because of PPG's refusal to pay her money pursuant to the state court judgment she received. Rec. Doc. 1 at 9. She clarifies that PPG deliberately withheld all payments to force her to relinquish half the value of her state court judgment, rather than for neutral reasons. Rec. Doc. 15 at 5. But Jasper does not provide evidence counter to PPG's financial instability. She conclusively states that whether PPG's actions were "rational, arbitrary, or coercive presents a classic factual dispute" but does not develop that argument with evidentiary support. *Id*.

7

Moreover, Jasper's arguments are foreclosed by existing precedent. Over a century ago, the Supreme Court decided a similar case in *Folsom v. City of New Orleans*, 109 U.S. 285 (1883). In that case, relators who had obtained state court judgments against the City of New Orleans were prevented from collecting on their judgments because of a new state constitution which restricted New Orleans' ability to impose taxes and limited funds to the city's existing expenses. 109 U.S. at 287. In rejecting the relators' Fourteenth Amendment challenge, the Supreme Court held that though the relators' state court judgments were property, they "cannot be said to be deprived of them so long as they continue an existing liability against the city" rather than an immediate right to payment. *Id*. at 289. That principle has been consistently maintained in subsequent decisions, *see, e.g.*, *Minton v. St. Bernard Par. Sch. Bd*., 803 F.2d 129, 132 (5th Cir. 1986) (stating that a school board's failure to timely pay plaintiff's judgment is not a denial of due process because *Folsom* recognized that "the property right created by a judgment against a government entity is not a right to payment at a particular time" but merely recognition of existing debt); *see also Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 230 (5th Cir. 2022) (rejecting plaintiff's Fourteenth Amendment claim for similar reasons). Similarly, while Jasper has an outstanding and valid state court judgment, she does not have a right to force PPG to immediately pay that judgment, but only for PPG to continue to recognize its existing debt to her—which it has. As such, PPG's Motion for Summary Judgment on Jasper's Fifth Amendment claim is **GRANTED**.

Jasper also appears to assert Equal Protection claims in violation of the Fouteenth Amendment. Rec. Doc. 1. She challenges the classification that the Ordinance creates between persons who participate in the JSP, and receive payment, and those who refuse to participate in the JSP, and do not receive any payment or a payment schedule. *Id*. at 6, 27. She argues that her claim is not about delay but instead intentional discrimination. Rec. Doc. 15 at 5. However, in opposing

PPG's Motion for Summary Judgment, Jasper has not identified a suspect class or explained whether the JSP or its administration infringes upon a fundamental right. *Id*. As such, the appropriate standard for reviewing discriminatory conduct is "rational basis review" which is more deferential to government classifications. *See, e.g.*, *Cooper v. Orleans Parish School Board*, 99-0050 (La. App. 4 Cir. 9/8/99), 742 So. 2d 55.

Jasper acknowledges that rational basis review applies, *see* Rec. Doc. 15 at 5, but states that rational basis does not permit summary judgment where "evidence supports a finding of intentional and disparate treatment lacking a legitimate governmental justification." *Id*. However, there is no factual or legal support for a finding of "intentional and disparate treatment lacking a legitimate governmental justification." She relies on an allegation that she was treated differently without legitimate justification. But merely pointing to allegations is not sufficient in opposing summary judgment. *See, e.g., Triple Tee Golf, Inc. v. Nike, Inc.,* 85 F.3d 253, 261 (5th Cir. 2007) ("The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing."). She has not introduced evidence—and therefore has not created a genuine dispute of material fact—that PPG's enactment of the Ordinance and reliance on classifications between participants and non-participants in the program, is not rationally related to its fiscal goals .

In fact, the program challenged here is like the one in *Cooper v. Orleans Parish School Board*, 99-0050 (La. App. 4 Cir. 9/8/99), 742 So. 2d 55, in which the court denied plaintiffs' Equal Protection challenge to the Orleans Parish School Board's program to delay payments to certain state court judgment creditors because of insufficient funding. That court noted that legislation "is presumed to be valid, and will be sustained as long as the classification drawn by the statute is rationally related to a legitimate state interest." 742 So. 3d at 59. The *Cooper* court held that it

9

could not "say that there is no rational basis for the discount categorizations related to legitimate government objectives." *Id*. at 62.  Subsequent decisions have continually relied on *Cooper* in rejecting challenges wherein plaintiff demands a quicker payout of their state court judgment. *See, e.g.*, *Bennett v. City of New Orleans*, No. CIV.A 03-912, 2004 WL 60316, at *2 (E.D. La. Jan. 9. 2004) (applying *Cooper* in stating that the City of New Orleans had a rational basis for paying federal court judgments before state court judgments); *see also Davis v. Orleans Par. Sch. Bd*., No. CIV.A 04-3511, 2005 WL 2037369 (E.D. La. Aug. 18, 2005) (applying *Cooper* in rejecting plaintiff's assertion that the school board's refusal to pay negotiated settlement amount unless plaintiff agrees to a substantial reduction of the negotiated amount violated the Equal Protection Clause). Given these precedents, Jasper's Equal Protection claim is unavailing.

Jasper argues that reliance on *Cooper* is "misplaced" because there was evidence showing that the defendant municipality had insufficient funds to satisfy state tort judgments. Rec. Doc. 26-1 at 14. However, PPG's position is based on un-rebutted relevant evidentiary support. See Rec. Docs. 14-3 thru 4 and 31-1 thru 3. No support is offered to "negate every conceivable basis which might support" the Ordinance. *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206, 225 (5th Cir. 2019). Though rational basis is "fact intensive," it "places no affirmative evidentiary burden on the government, [but] plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *Id*. at 225. Jasper has not shown such evidence outside of her general allegations. *See, e.g., Triple Tee Golf,* 85 F.3d at 261 (noting that the non-movant may not rest upon their own allegations in showing a genuine fact issue for trial).

Per above-noted evidentiary support for reducing a backlog of outstanding state court judgment and meet the operational needs of the parish, the Court finds that PPG's means of doing so—the JSP program—at the very least satisfies rational basis review. Plaintiff has not shown

10

that PPG's current program is irrational or unconstitutionally discriminatory, a s explained by Ordinance 20-105 and PPG's affidavits establishing why settlements are treated differently than state court judgments as well as differential treatment between participants and non-participants, *see* Rec. Docs. 31-1; 31-2, .

For the reasons provided, PPG's Motion for Summary Judgment on Jasper's Fourteenth Amendment Equal Protection claim is **GRANTED**.

ii.      Jasper's Motion for Summary Judgment

At best, rather than addressing the claims in the complaint, Jasper basically seeks summary judgment on claims that were not raised in the complaint, including (1) a First Amendment claim for denial of access to court or for retaliation for exercising her right;[1] (2) a Fourteenth Amendment Equal Protection claim based on distinction between judgment creditors who choose not to participate in the JSP and claimants who settle with PPG without obtaining a judgment; (3) any Fourteenth Amendment substantive due process claim based on infringement of her First Amendment rights; (4) a claim for unconstitutional vagueness; and (5) a separation of powers claim that the Ordinance usurps judicial power because it prevents the courts from providing enforceable judgments. *See* Rec. Doc. 26-1 at 3, 8, 16, 19, and 22.

Despite Jaspers arguments to the contrary, *see* Rec. Doc. 32, none of these claims were included in her complaint. Jasper argues that PPG had notice of these claims because the parties

---

[1] Jasper mentions the First Amendment once in her complaint and does not put any party on notice about the specific claim being asserted.

participated in a pretrial conference wherein the Court "explicitly identified, explored, and expanded upon the legal and factual issues that now form the basis of [Jasper's] Motion for Summary Judgment." Rec. Doc. 32 at 4. Jasper continues that "the Court ordered cross-motions for summary judgment on these very issues." But to the extent that Jasper argues that the Court expanded her legal claims and directed her to file a summary judgment motion on new claims, she is mistaken. In its Minute Entry for the pretrial conference, the Court "instructed the parties that the legal issues will be focused on plaintiff's federal constitutional claims and not related state law claims." Rec. Doc. 23. That was not an invitation to expand the legal issues under consideration, but to get full briefing on the federal constitutional claims that Jasper had already introduced.

PPG argues that the newly asserted claims should be dismissed. Rec. Doc. 31 at 5. In support, it cites case law, including *Grant v. Adm'rs of Tulane Educ. Fund*, No. CV 22-66, 2024 WL 4216041 (E.D. La. Sept. 17, 2024), which held that a represented plaintiff, failing to move earlier to amend her complaint to assert new causes of action, forfeited the newly raised claims. Jasper responds that she should be allowed to amend her complaint and reurge her motion. Rec. Doc. 32 at 9. She cites *Lewis v. Ascension Par. Sch. Bd.*, 996 F. Supp. 2d 450. 458 (M.D. La. 2014), which held that under Fifth Circuit precedent, a "district court should construe [a newly raised] claim as a motion to amend the complaint under Rule 15(a)." *Lewis*, however, cited *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010), which recognizes that construing a newly added claim as a motion to amend is "particularly true where, as here, the litigant is *pro se* and has not yet made any amendments to her complaint." Other courts within this circuit have recognized that courts have discretion to decline to consider a claim first asserted in a motion for summary judgment. *See, e.g.*, *Garza v. City of La Porte*, 160 F. Supp. 3d 986, 993 (S.D. Tex. 2016) (holding that newly added state law claims raised for first time in plaintiff's motion for summary

judgment were not properly before the Court since "a party cannot use a motion for summary judgment to raise new claims").

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Rule 15 "evinces a bias in favor of granting leave to amend." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). However, the decision to grant leave to amend is within the decision of the district court and is not automatic. *Id*. In deciding whether to grant leave to amend, the court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of amendment. *Id*. at 314–15. In determining undue delay, a court may look to "whether the movant has explained the delay, and whether the movant knew the facts underlying the amended complaint at the time the complaint was filed." *Id*. at 315–16.

Jasper argues that she should be allowed to amend her complaint because "there has been no prior request to amend, no bad faith, and the proposed amendment is not futile, as it would clarify and expand factual allegations already discussed in the pretrial conference." Rec. Doc. 32 at 10. Notably, Jasper does not address another basis upon which a court can deny a motion for leave to amend: undue inexcusable delay. As stated, when rejecting a request for leave to amend, a court can consider whether a movant has explained its delay in moving and whether the movant knew of the facts underlying its amended complaint at the time its original complaint was filed. *Matter of Southmark Corp.*, 88 F.3d at 315–16. The facts of this case remain as they were when Jasper first filed her complaint on February 26, 2025. Rec. Doc. 1. Jasper has known that amendment to pleadings were due no later than July 3, 2025. Rec. Doc. 11. Oral argument was held on March 26, 2026, and Jasper requested leave to file an amended complaint only three days

13

prior. Rec. Docs. 30, 32. Because Jasper is represented and has had ample time to file an amended complaint, but has not, her late request to do so constitutes undue delay and will be rejected. Moreover, and notwithstanding our wishes for a fairer result, it would be futile to allow the amendment in view of express authorities cited above that rejected similar attacks on governmental efforts to achieve reasonable balance between fiscal responsibilities to maintain operations and yet achieve satisfaction, albeit partially, with valid claims against it.

The lateness and futility of newly asserted federal claims require denial of plaintiff's Motion for Summary Judgment over such claims. As noted earlier, supplemental jurisdiction over remaining state law claims is rejected, leading to dismissal without prejudice of the state based claims.

New Orleans, Louisiana, this 31st day of March 2026

_____
SENIOR UNITED STATES DISTRICT JUDGE

14